**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEXINGTON LUMINANCE LLC,<br><br>Plaintiff,<br><br>v.<br><br>TCL MULTIMEDIA TECHNOLOGY HOLDINGS, LTD. and TTE TECHNOLOGY, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 16-cv-11458-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                          **August 30, 2017**

**I.      Introduction**

Plaintiff Lexington Luminance LLC ("Lexington") has filed this lawsuit against Defendants TCL Multimedia Technology Holdings, Ltd. ("TCL") and TTE Technology, Inc. ("TTE") (collectively, "Defendants") alleging direct, induced and willful infringement pursuant to 35 U.S.C. § 284. D. 22. Defendants have moved to strike or alternatively, to dismiss Lexington's second amended complaint ("SAC"). D. 24. Lexington has subsequently moved to strike Defendants' affirmative defenses. D. 30. For the reasons stated below, the Court DENIES the motion to strike or dismiss the SAC, D. 24, and DENIES the motion to strike Defendants' affirmative defenses, D. 30.

## II.    Standard of Review

### A.    Motions to Strike

"Under Rule 12(f), a party may move to strike from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter." Dennison v. LaPointe, No. 06-40100-FDS, 2006 WL 3827516, at *1 (D. Mass. Dec. 21, 2006) (internal quotation marks and citation omitted). Rule 12(f) is "designed to reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct." 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1380 at 391 (2004). Although "[m]otions to strike under Rule 12(f) are generally disfavored," U.S. S.E.C. v. Nothern, 400 F. Supp. 2d 362, 364 (D. Mass. 2005), a pleading that violates the principles of Rule 8 may be struck "within the sound discretion of the court," Newman v. Commonwealth of Mass., 115 F.R.D. 341, 343 (D. Mass. 1987) (citation omitted). In assessing whether a motion to strike should be granted, the Court must bear in mind that such motions are rarely granted absent a showing of prejudice to the moving party. See Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 398 (D.R.I. 1998) (explaining that "[m]ere redundancy is insufficient to support a motion to strike" and that "the movant must demonstrate that prejudice would result if the offending material remained in the pleadings" (collecting cases)).

### B.    Motion to Dismiss

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the

conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103.  "In determining whether a [pleading] crosses the plausibility threshold, the reviewing court [must] draw on its judicial experience and common sense."  García-Catalán, 734 F.3d at 103 (internal quotation marks and citations omitted).  "This context-specific inquiry does not demand a high degree of factual specificity."  Id. (internal quotation marks and citations omitted).

## III.    Factual Background

Taking all factual allegations in the SAC as true, as required at this stage, the Court considers the following facts.  Lexington is a limited liability company organized under the laws of Massachusetts with its principal place of business in Lexington, Massachusetts.  D. 22, ¶ 1.  TCL is a limited liability company organized under the laws of the Cayman Islands with its principal place of business in Hong Kong.  D. 22, ¶ 2.  TTE is a corporation organized under the laws of California with its principal place of business in Corona, California.  D. 22, ¶ 3.

On August 30, 2005, the U.S. Patent Office ("PTO") issued a patent to Lexington entitled "Semiconductor Light-Emitting Device and Method for Manufacturing the Same," (the " '851 patent").  D. 22, ¶ 9.  The PTO subsequently issued an *ex parte* reexamination certificate on December 5, 2014, incorporated into the '851 patent.  D. 22, ¶ 10; D. 22, Ex. A.  The '851 patent remains valid and enforceable.  D. 22, ¶ 11-12.

Lexington alleges that Defendants have and continue to infringe at least Claim 1 of the '851 patent. D. 22, ¶ 13. As alleged, Defendants have infringed the '851 patent by making, using, offering for sale, selling, and importing televisions and other electronic devices, including but not limited to at least one specific television model, 40FD2700. Id. Specifically, the Accused Products use Light-Emitting diodes ("LEDs") for the purpose of backlighting electronic displays. D. 22, ¶ 15. This product and others of Defendants' (the "Accused Products") perform similar functions as the devices embodied by the '851 Patent in substantially the same way to achieve the same result. Id. In addition to making, using, offering for sale, selling and importing the Accused Products, Defendants also distributed the Accused Products and provided instruction manuals for them. D. 22, ¶ 29. The instruction manuals, among other functions, would have informed customers about the existence of LEDs intended to backlight the screens of the Accused Products, resulting in their use in the operation of the Accused Products. Id.

By June 6, 2016, Defendants became aware of the '851 patent and of their infringement of the '851 patent through written notification sent by Lexington to TTE. D. 22, ¶ 25. As Lexington contends, TTE's knowledge of the '851 patent and its infringement of the '851 patent was confirmed when the initial complaint in this case was filed on July 15, 2016. D. 22, ¶ 26. Similarly, TCL's knowledge of the '851 Patent and its infringement of the '851 Patent was confirmed when it filed a waiver of foreign service requirement on August 2, 2016. D. 22, ¶ 27.

IV. **Procedural History**

Lexington instituted this action on July 13, 2016. D. 1. Lexington filed its first amended complaint ("FAC") on August 1, 2016. D. 6. Lexington filed its SAC on December 5, 2016. D. 22. Defendants moved to strike or dismiss on December 19, 2016. D. 24. Lexington moved to strike Defendants' affirmative defenses on January 2, 2017. D. 30. The Court heard the parties

4

on the pending motions on January 25, 2017 and took these matters under advisement. D. 33. On February 6, 2017, Defendants moved to stay this case pending *inter partes* review ("IPR") by the PTO, D. 34, which the Court granted on February 27, 2017, staying the case until August 3, 2017, D. 39. The Court ordered the parties to file a joint status report before August 3, 2017, providing an update on the status of the IPR proceedings. Id. On July 28, 2017, the parties filed a joint status report attaching the decisions issued by the Patent Trial and Appeal Board ("PTAB") while the case was stayed. D. 43. In the status report, Lexington requested that the stay be lifted, D. 43 at 3, while Defendants requested that it be maintained so that another IPR could be instituted, D. 43 at 4-5. The Court now DENIES Defendants' further motion to maintain the stay, given the PTAB's action on the prior IPR petitions. Accordingly, the Court now rules on the still pending motion to strike or dismiss, D. 24, and motion to strike, D. 30.

## V.     Discussion

### A.     Motion to Strike or Dismiss

#### 1.     Motion to Strike Second Amended Complaint

A party may amend its pleading once "as a matter of course" within 21 days after filing or 21 days after a responsive pleading or motion has been filed. Fed. R. Civ. P. 15(a)(1). All other amendments before trial may only be made "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Defendants argues that the FAC, filed within 21 days of the original complaint, was filed as of right without its consent. D. 25 at 3. Defendants argue that the SAC was then filed without consent or leave from the Court, where the right to amend under Rule 15(a)(1) had already been used. Defendants now request that the SAC be struck.

Lexington argues that its FAC was filed pursuant to Rule 15(a)(2) with Defendants' consent and its SAC was filed as of right pursuant to Rule 15(a)(1). D. 29 at 3. Lexington attaches

5

to its brief an email chain in which on August 1, 2016, Defendants' counsel identified to Lexington's counsel that the original complaint named an incorrect entity. D. 29-2 at 3-4. Defendants' counsel suggested that "Lexington file an amended complaint identifying the correct defendants" before proceeding in the litigation and to "have a clean procedural record." Id. Lexington filed the FAC that same day. D. 6. In a subsequent email chain, Defendants' counsel argued that it had not consented to the filing of the FAC and intended to move to dismiss the SAC on this ground, among others. D. 29-3. Lexington argues that it believed it had received consent for the FAC and filed the SAC in the belief it was still permitted to file its amended pleading as of right. D. 29 at 4.

Given the course of correspondence between counsel, any mistaken belief by Lexington's counsel was, at a minimum, a good faith error. Rule 15(a)(2) encourages the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Unless there is good reason to deny leave to amend, such as undue delay, bad faith, dilatory motive on the part of the movant or futility of the amendment, the leave should be granted. See Grant v. News Grp. Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995). Here where the amending party fails to obtain consent by accident and otherwise acts in good faith, it is not in the interests of justice to dismiss the action on this ground. See e.g. Greggs v. Autism Speaks, Inc., 987 F. Supp. 2d 51, 54 (D.D.C. 2014) (declining to strike amended complaint based on mistaken reading of scheduling order); Hall v. Oladiji, No. CIV.A. 88-1906-LFO, 1989 WL 3737, at *1 (D.D.C. Jan. 10, 1989) (granting leave to amend complaint *nunc pro*

*tunc* where plaintiff mistakenly filed without consent or leave of court because she believed "no responsive pleading had been filed").[1]

Accordingly, the Court grants Lexington leave to amend the FAC *nunc pro tunc* as of August 1, 2016, and denies Defendants' motion to strike the SAC as moot. The Court now turns to the merits of Defendants' motion to dismiss the SAC under Rule 12(b)(6).

### 2. *Motion to Dismiss*

#### a) Direct Infringement

In light of the abrogation in 2015 of Fed. R. Civ. P. 84 and the Appendix of Forms to the Rules, including Form 18, see Sunrise Techs., Inc. v. Cimcon Lighting, Inc., No. 15-cv-11545-NMG, 2016 WL 6902395, at *2 (D. Mass. Nov. 23, 2016) (citing Supreme Court of the United States, Order Regarding Amendments to the Federal Rules of Civil Procedure (U.S. Apr. 29, 2015), https://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf)), courts will engage in the same context-specific two-step process of distinguishing factual allegations from conclusory legal allegations contained in the complaint, and determine whether the claim is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented

---

[1] Cases cited by Defendants in support of their argument envision multiple bad faith scenarios, which are inapposite. See F.D.I.C. v. Kooyomjian, 220 F.3d 10, 15 (1st Cir. 2000) (adding new counterclaims when leave had been granted for narrow and limited purpose); BEG Investments, LLC v. Alberti, 85 F. Supp. 3d 13, 25-26 (D.D.C. 2015) (same, where plaintiff had serially violated the court's narrow orders); Clewis v. Medco Health Sols., Inc., 578 F. App'x 469, 470 (5th Cir. 2014) (same).

invention during the term of the patent therefor, infringes the patent." 35 U.S.C § 271(a).

Accordingly, factual allegations in support of a claim of direct patent infringement must have

sufficient detail to "place the alleged infringer on notice. This requirement ensures that the accused

infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and

defend itself." OpenTV, Inc. v. Apple Inc., No. 15 Civ. 02008, 2016 WL 344845, at *3 (N.D. Cal.

Jan. 28, 2016) (quoting Internet Patents Corp. v. Gen. Auto. Ins. Servs., 29 F. Supp. 3d 1264, 1267

(N.D. Cal. 2013)); see Regeneron Pharm., Inc. v. Merus B.V., No. 14-cv-1650, 2014 WL 2795461,

at *4 (S.D.N.Y. 2014) (alleging "a specific patent and a specific product that allegedly infringes

that patent by virtue of certain specific characteristics" was sufficient to state a direct infringement

claim).[2]  To state a claim for direct infringement, the plaintiff must allege that the infringing

product practices all elements of a patent claim.  See Sunrise Techs., 2016 WL 6902395, at *2

(citing Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995)).

Defendants argue that Lexington only identifies "conventional features that would be found

in any modern LED – a 'saphire substrate' and a 'gallium nitride' first layer" in its allegations of

direct infringement.  D. 25 at 7-8, 13-14.  That is, Defendants contend that the pleading fails to

inform them of the specific structures in the Accused Products that infringe Claim 1 of the '851

Patent.  Defendants rely on several cases in which allegations limited to some but not all elements

of the patent claim were insufficient to state a claim for direct infringement.  See Asghari-Kamrani

v. United Servs. Auto. Ass'n, No. 2:15-CV-478, 2016 WL 1253533, at *4 (E.D. Va. Mar. 22,

---

[2] The OpenTV court's analysis applied the standard set by Twombly and Iqbal, not Form 18.  See
OpenTV, 2016 WL 344845, at *3.  In Regeneron, decided in 2014, the court took the approach of
the Federal Circuit in K-Tech, applying "the basic elements set forth in Form 18 as well as the
guidance provided in Twombly."  Regeneron, 2014 WL 2795461, at *2; id. at *4

2016) (only identifying a single limitation when others were present in the claim insufficient for 8(a)); e.Digital Corp. v. iBaby Labs, Inc., No. 15-CV-05790-JST, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (same principle, but plaintiff only alleged "most of the elements" and failed to allege another limitation of the claim); Atlas IP, LLC v. Exelon Corp., 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016) (same, but notes that the extent of allegations "must depend on the complexity of the patent and the number of claims allegedly infringed"); Robern, Inc. v. Glasscrafters, Inc., No. CV 16-1815, 2016 WL 3951726, at *5 (D.N.J. July 22, 2016) ("no attempt to describe the alleged infringement and also failed to relate factual assertions to the pertinent claims"). Lexington argues that it has met its burden by alleging that each of the elements or limitations of Claim 1 of the '851 Patent are present in the Accused Products. D. 29 at 6.

Here, the SAC states a plausible infringement claim. Claim 1 of the '851 Patent provides several characteristics: (1) that it is a Semiconductor light-emitting device; with (2) a substrate; (3) a textured district defined on the surface of the substrate comprising a plurality of etched trenches having a sloped etching profile with a smooth rotation of micro-facets without a prescribed angle of inclination; (4) a first layer disposed on said textured district comprising a plurality of inclined lower portions, said first layer and said substrate form a lattice-mismatched misfit system, said substrate having at least one of a group consisting of group III-V, group IV, group II-VI elements and alloys, ZnO, spinel and sapphire; (5) a gallium nitride first layer; (6) a sapphire substrate; and (7) a light-emitting structure containing an active layer disposed on said first layer, whereby the plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer. D. 22-1 at 14. The SAC includes allegations that the Accused Products contain LEDs with these elements. See D. 22, ¶¶ 15-22. These elements are present in Claim 1 of the '851 Patent as attached and incorporated into the SAC. See D. 22-1

at 14; see Trans-Spec Truck Serv. v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008). Therefore,

Lexington has included allegations referencing each element of Claim 1 of the '851 Patent,

satisfying this threshold requirement.

Defendants also argue that Lexington's allegations merely list the limitations of Claim 1

of the '851 Patent as present in the LEDs used in their products and that such allegations are

insufficient to state a claim for direct infringement. D. 25 at 8; id. at 10-11. Defendants rely on

Macronix Int'l Co. v. Spansion Inc., 4. F. Supp. 3d 797, 804 (E.D. Va. 2014), in which "parrot[ing]

the claim language for each element" failed to satisfy Twombly and Iqbal. Id. Lexington argues

that further "infringement details" of the elements or limitations of Claim 1 are not necessary to

state a claim for direct infringement. Id. at 6-8.

While it is true that a plaintiff must allege that Defendants' product contain all elements of

one claim of the allegedly infringed patent, see Sunrise Techs., 2016 WL 6902395, at *2, further

specificity is not required to state a claim. The Court declines to "wade beyond the sufficiency of

the SAC and into an assessment of the SAC's . . . substantive merits." Simplivity Corp. v.

Springpath, Inc., No. 15-cv-13345-TSH, 2016 WL 5388951, at *4 (D. Mass. July 15, 2016); see

Windy City Innovations, LLC v. Microsoft Corp., No. 16-CV-01729-YGR, 2016 WL 3361858, at

*5 (N.D. Cal. June 17, 2016) (citing Phonometrics, Inc. v. Hosp. Franchise Sys., Inc., 203 F.3d

790, 794 (Fed. Cir. 2000)); Bender v. LG Electronics U.S.A., Inc., No. 09-cv-02114, 2010 WL

889541, at *6 (N.D. Cal. Mar. 11, 2010) (noting that "[s]ufficient allegations [under Iqbal and

Twombly] would include, at a minimum, a brief description of what the patent at issue does, and

an allegation that certain named and specifically identified products or product components also

do what the patent does, thereby raising a plausible claim that the named products are infringing").

The cases cited by Defendants do not compel a different conclusion. In <u>Macronix</u>, the court dismissed an amended complaint alleging direct patent infringement because the complaint failed to show "the specific claim or claims which are alleged to be infringed, and the elements thereof that are alleged to be infringed by the allegedly infringing product, and how that product is alleged to infringe those elements" as the court had requested in a prior order dismissing the original complaint. Macronix, 4. F. Supp. 3d at 799. <u>Asghari–Kamrani</u>, 2016 WL 1253533, at *3–4, also cited by Defendants, dismissed a complaint that (1) failed to allege which features of the defendants' product corresponded to another company's product where "[e]very claim of the patent require[d] these entities" and (2) "fail[ed] to identify with sufficient particularity how each allegedly infringing feature . . . infringes the patent. . . . Plaintiffs have not even identified a feature of [the] website that infringes." <u>Id.</u>

Lexington, however, has made a plausible showing here of direct patent infringement. It has alleged the patent claim that has been infringed, D. 22, ¶ 13, the infringed elements of that claim, D. 22, ¶ 15-22, and identifies both the function of the infringed LEDs (television backlighting) in the Accused Products and the marketing of that function in the Accused Products' instruction manuals. D. 22, ¶¶ 15, 29. Therefore, Lexington's allegations are sufficient to state a claim for direct patent infringement. <u>See</u> <u>Simplivity</u>, 2016 WL 5388951, at *4.

Accordingly, Defendants' motion to dismiss Lexington's direct patent infringement claim is denied.

b)      <u>Induced Infringement</u>

To state a claim for induced infringement, a claimant must plausibly allege that the defendant (1) knew of the patent; (2) actively and knowingly aided and abetted another's direct infringement; and (3) possessed specific intent to induce infringement. <u>See</u> <u>Sunrise Techs.</u>, 2016

WL 6902395, at *4 (citing Mass. Inst. of Tech. v. Shire, PLC, No. 13–cv–10020, 2014 WL 404696, at *8 (D. Mass. Feb. 2, 2014)). "[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement." Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1926 (2015) (quoting Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011)); see Mass. Inst. of Tech., 2014 WL 404696, at *8 (noting that "an induced infringement claim will not pass muster under 12(b)(6) when the plaintiff 'does not allege any facts to support a reasonable inference that [the defendant] specifically intended to induce infringement . . . or that it knew it had induced acts that constitute infringement" (quoting Superior Indus., LLC v. Thor Global Enters. Ltd., 700 F.3d 1287, 1296 (Fed. Cir. 2012)). The specific intent requirement may also be satisfied by alleging that the defendant "willfully blinded itself to the infringing nature" of the acts it induced. Global-Tech, 563 U.S. at 770.

Defendants argue that (1) Lexington has failed to allege that Defendants caused acts constituting direct infringement by a third party and (2) even if these acts by third parties did constitute direct infringement, Lexington has failed to allege that Defendants had knowledge of the infringement, as opposed to mere knowledge of the patent's existence. D. 25 at 16-17. Defendants argue that the notice of the '851 patent's existence they allegedly received from Lexington was insufficient, D. 22, ¶ 25, relying on Commil USA for the proposition that "Global-Tech requires . . . . proof the defendant knew the acts were infringing." Commil USA, 135 S. Ct. at 1928.

Lexington has made a plausible claim for induced infringement. It has alleged that Defendants, through various notices related to either pre-lawsuit correspondence or acknowledgement of notice through filings in this case, had knowledge of the '851 patent. See D. 22, ¶¶ 25-27. It has also alleged that by manufacturing and distributing the Accused Products,

and providing instruction manuals for their use, Defendants have caused third-party resellers and end-users of the Accused Products to infringe the '851 patent. See id., ¶¶ 28-29. At a minimum, allegations that Defendants created "materials provid[ing] a description of the functionality of the accused products and the intended use of such products," such as an instruction manual, "support an inference that there is at least one direct infringer" and thus an inducement. Sunrise Techs., 2016 WL 6902395, at *4 (citing Carson Optical Inc. v. eBay, Inc., Docket No. 12–CV–3793, 202 F. Supp. 3d 247, 254 (E.D.N.Y. 2016)). Furthermore, because the Court has concluded that the allegations plausibly allege that the '851 patent was infringed, that allegation creates a "reasonable inference, especially at the motion to dismiss stage that the manufacturer/importer intended to encourage infringement." Zond, Inc. v. Fujitsu Semiconductor Ltd., 990 F. Supp. 2d 50, 59 (D. Mass. 2014) (collecting cases). Accordingly, Defendants' motion to dismiss Lexington's induced infringement claim is denied.

c)      Willful Infringement

To state a claim for willful infringement, a claimant must plausibly allege that defendant (1) knew of the patent and (2) knew of its alleged infringement. See Sunrise Techs., 2016 WL 6902395, at *4 (citing Select Retrieval, LLC v. Bulbs.com Inc., No. 12–cv-10389, 2012 WL 6045942, at *6 (D. Mass. Dec. 4, 2012)).

Defendants argue that Lexington's only allegation to support its claim of willful infringement is that "TCL knew of the '851 patent as of June 6, 2016, five weeks before this lawsuit commenced, and that TCL subsequently continued to sell and distribute its products and instruction manuals." D. 25 at 17-18. Defendants further argue that Lexington has not alleged any facts that they were "actually aware" of facts that would lead them to conclude that the LEDs infringed on the '851 patent, especially because they do not design or manufacture the LEDs.

D. 25 at 17-18. For the same reasons explained above, Lexington has plausibly alleged knowledge

through pre-lawsuit correspondence and acknowledgements of notice through filings in this case.

See D. 22, ¶¶ 25-27. Whether Lexington can ultimately show that it is entitled to enhanced

damages for Defendants' "egregious infringement behavior" is not relevant to the Court's

consideration of a motion to dismiss. Halo Electronics., Inc. v. Pulse Electronics, Inc., 136 S. Ct.

1923, 1932 (2016). At this juncture, a plaintiff is not required to allege more than knowledge of

the patent and of infringement. See, e.g., Simplivity Corp., 2016 WL 5388951, at *18; Select

Retrieval, 2012 WL 6045942, at *6; Milwaukee Elec. Tool Corp. v. Hitachi Koki, Ltd., No. 09-C-

948, 2011 WL 665439, at *5 (E.D. Wis. Feb. 14, 2011). Accordingly, Defendants' motion to

dismiss Lexington's willful infringement claim is denied.

### B. Motion to Strike Affirmative Defenses

Lexington has moved to strike Defendants' affirmative defenses II (Invalidity), III

(Estoppel), VII (Waiver, Laches, and/or Equitable Estoppel) and VIII (Exhaustion and License) as

insufficient as a matter of law pursuant to Fed. R. Civ. P. 12(f). D. 30 at 1. "Such motions 'should

be granted only when it is beyond cavil that the defendant could not prevail on them.'" 4MVR,

LLC v. Hill, No. 12-CV-10674, 2015 WL 3884054, at *8 (D. Mass. June 24, 2015) (quoting

Honeywell Consumer Prods., Inc. v. Windmere Corp., 993 F. Supp. 22, 24 (D. Mass. 1998)).

Since it remains disputed whether Twombly and Iqbal applies to affirmative defenses,

compare InvestmentSignals, LLC v. Irrisoft, Inc., No. 10-cv-600-SM, 2011 WL 3320525, at *2

(D.N.H. Aug. 1, 2011) (quoting Tyco Fire Products v. Victaulic Co., 777 F. Supp. 2d 893, 900

(E.D. Pa. 2011)) and Rosen v. Masterpiece Marketing Grp., LLC, 222 F. Supp. 3d 793, 802 (C.D.

Ca. 2016) with Top Tobacco, L.P. v. Good Times USA, LLC, 16-cv-4292, 2017 WL 395698, at

*4 (N.D.Il. January 30, 2017), the Court declines, at this stage, to strike affirmative defenses that

are more than adequate to give Lexington fair notice of Defendants' defenses. <u>Rosen</u>, 222 F. Supp. 3d at 802.

As discussed further below, Lexington's motion to strike is denied in its entirety. As noted at the motion hearing, Lexington will have an opportunity to move at a later date, either summary judgment or *in limine* prior to trial, to strike or otherwise limit Defendants' affirmative defenses.

### 1. *Affirmative Defense II – Invalidity*

Defendants' affirmative defense II alleges that "[o]ne or more of the asserted claims of the '851 patent are invalid for failing to comply with one or more provisions of Title 35 of the United States Code, including, without limitation, one or more of §§ 101, 102, 103, and/or 112." D. 27, ¶ 31. In support of this allegation, Defendants make reference to a petition for IPR of the '851 patent, filed by LG Innotek Co., Ltd. <u>Id.</u> Lexington argues that this allegation is too broad to provide notice of the basis for this affirmative defense, because it relies generally on multiple statutory provisions, each with different bases for patent invalidity, and fails to make any factual allegations that would further clarify the nature of the invalidity defense. D. 30 at 4-6. Defendants argues that they are not obligated to allege "each specific ground of invalidity" to support an affirmative defense of patent invalidity against a motion to strike under Rule 12(f). D. 32 at 9. Defendants further argue that patent invalidity is a single defense, and that invalidity is to be addressed as a single issue contemplating all relevant statutory sections. D. 32 at 9.

Lexington further argues that the citation to the petition for IPR does not better specify the nature of the affirmative defense. D. 30 at 4. Defendant argues that the petition for IPR supports its invalidity defense by showing "on a limitation-by-limitation basis how the claims of the patent-in-suit are taught or rendered obvious by the prior art." D. 32 at 8.

Lexington's overbreadth and fair notice arguments are not persuasive. While there are cases "which find that simply asserting invalidity and basing that assertion on multiple statutes, all in the disjunctive, is insufficient," Intelytics Inc. v. Modiv Media, Inc., No. CV 12-636 S, 2013 WL 12030016, at *1 (D.R.I. May 16, 2013) (collecting cases), Defendants have not asserted such a bare affirmative defense here. Affirmative defenses that include further details, such as "listing the applicable statutes . . . provid[ing] a patent and four United States Patent Publications as support for the invalidity defense . . . . satisf[y] the requirement of Rule 8(c) . . . that affirmative defenses be 'affirmatively state[d].'" Id. (quoting Fed. R. Civ. P. 8(c)). In this case, Defendants attached a petition for IPR of the '851 Patent in support of their invalidity defense. See D. 27 at 5. Therefore, Lexington's motion to strike affirmative defense II is denied.

### 2. *Affirmative Defense III –Estoppel*

Defendants' affirmative defense III alleges that "proceedings at the United States Patent and Trademark Office" relating to the prosecution of the application of the '851 Patent preclude Lexington from asserting any infringement claims. D. 27, ¶ 32. Lexington argues that Defendants have failed to allege any facts that might specify the subject matter they allege was surrendered during the patent prosecution process that would now be outside Lexington's scope to recover under an infringement claim. D. 30 at 6.

In its motion, Lexington relies upon Automated Transaction Corp. v. Bill Me Later, Inc., No. 09-cv-61903, 2010 WL 3419282, at *4 (S.D. Fla. Aug. 27, 2010), in which the court struck a prosecution history estoppel defense for failing to provide "a date of whatever Patent Office filing" the party may rely upon. Id. The Court declines to adopt this approach, which specifies no basis in Rule 8 nor in precedent for such an approach. See Petedge, Inc., 2016 WL 407065, at *4 n.1. Therefore, Lexington's motion to strike affirmative defense III is denied.

### 3. Affirmative Defense VII - Waiver, Laches, and/or Equitable Estoppel

Defendants' affirmative defense VII alleges that "Plaintiff's claims for relief, in whole or in part, are barred by the doctrines of waiver, laches, and/or equitable estoppel." D. 27, ¶ 36. Lexington argues that this affirmative defense does not "provide any basis or additional facts" to determine its plausibility, and should therefore be struck. D. 30 at 7-8. Lexington further argues that Defendants have not alleged any facts to satisfy any of the elements of waiver, laches or equitable estoppel. D. 30 at 7-8.

Lexington incorrectly applies the heightened pleading standard of Rule 9(b) to Defendants' estoppel and waiver, laches and/or equitable estoppel affirmative defenses. "[W]ithout Federal Circuit case law expressly indicating that all equitable defenses in patent cases, by rule, are subject to Rule 9(b), the Court will not strike those defenses at this stage of the litigation." Petedge, Inc., 2016 WL 407065, at *4 n.1; see Intelytics, 2013 WL 12030016, at *1. While other courts have applied Rule 9(b) to equitable affirmative defenses against patent infringement claims, see e.g. Sonos, Inc. v. D&M Holdings Inc., No. CV 14-1330-RGA-MPT, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016), report and recommendation adopted, No. CV 14-1330-RGA, 2016 WL 4581078 (D. Del. Sept. 1, 2016), the Court declines to adopt this approach. Therefore, Lexington's motion to strike affirmative defense VII is denied.

### 4. Affirmative Defense VIII - Exhaustion and License

Defendants' affirmative defense VIII alleges that "Plaintiff's claims for relief are barred in whole or in part by the doctrines of patent exhaustion and express or implied license." D. 27, ¶ 37. Lexington argues that Defendants similarly provide no facts that would plausibly support this defense. D. 30 at 9. For the same reasons laid out above, the Court declines to strike this defense on the grounds that it does not meet the standard of Iqbal and Twombly for their affirmative

defenses, but rather must only provide notice of the issues involved.  <u>InvestmentSignals</u>, 2011 WL

3320525, at *2.  Therefore, Lexington's motion to strike affirmative defense VIII is denied.

## VI.     Conclusion

For the foregoing reasons, the Court DENIES the motion to strike or dismiss the SAC,

D. 24, and DENIES the motion to strike Defendants' affirmative defenses, D. 30.  As to the parties'

recent joint status report, D. 43, the Court also DENIES Defendants' motion to maintain the stay

in this case.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
